## In the Matter of the Estate of JOSEPH M. ILLFELDER, Deceased.

Surrogate's Court, New York County, January 28, 1930.

*Arnold M. Schmidt,* for executors and trustees and National City Bank as general guardian of infant.

*Katz & Sommerich,* for the petitioner.

*Frederick E. Klein,* special guardian.

FOLEY, S. This is an application to vacate and set aside two decrees in accounting proceedings, one dated October 27, 1924, which judicially settled the accounts of the executors, and the other dated April 20, 1927, which settled the accounts of the trustees, and to allow the petitioner to file objections to the accounts. The petitioner was testator's wife and by his will he gave her 300,000 German marks as well as the income from the residuary estate during her life or until her remarriage. The executors' account showed that she had been paid the 300,000 marks, and in the proceeding to have that account judicially settled the widow was served with citation by publication and mailing. It is conceded that she had given her formal receipt in writing for the legacy, and had signed a consent and waiver of citation that were not filed in the accounting proceeding. She

remarried in 1926, whereupon the residuary trust created for her benefit terminated under the terms of the will and vested absolutely in her two children. These shares are now held by their general guardian. On February 21, 1927, the trustees filed their account and the widow executed a waiver of citation and a consent that the account be settled. She was also served with citation by publication and mailing, and again made no objection to the account, whereupon the decree was made settling the trustees' account. She now asks that the decrees be set aside so that she may file objections to both accounts on the ground that her legacy should have been paid in gold marks of Germany, or the value thereof in currency of the United States, instead of in the paper marks which she received.

A preliminary question was raised as to whether the widow claimed as a legatee or as a creditor by reason of an alleged dowry. It has been definitely settled, however, by the concession of her counsel that she makes no claim as a creditor, but solely as a legatee.

I hold that the facts set forth in this proceeding do not justify the setting aside of the decrees. (Surr. Ct. Act, § 20, subd. 6.) No fraud or error or other sufficient legal cause for reopening the decrees has been shown. (*Matter of Brennan*, 251 N. Y. 39; *Matter of Starbuck*, 221 App. Div. 702; affd., 248 N. Y. 555; *Matter of Tilden*, 98 id. 434; *Matter of Griffin*, 210 App. Div. 564; *Matter of De Lamar*, 209 id. 240; *Matter of Hermann*, 178 id. 182; *Matter of Peck*, 131 id. 81.) The executors paid the widow's legacy in paper marks on February 27, 1924, when paper marks were the only legal tender recognized either in Germany or in this country for payments in German marks. The executors did not then have, nor have they now, any monetary interest in the value of the legacy. The real dispute is between the widow and her two infant children by the testator, whose remainder interests under the will would be depleted to the extent of approximately $71,000 if she were successful in her present contention.

The material provision of the will, which was executed on March 18, 1920, reads as follows: " I give and bequeath unto my wife, Felicie A. Illfelder, 300,000 marks; * * *." The testator died on July 15, 1923. At the time the will was executed the paper mark was the only mark in existence, the gold mark having been withdrawn from circulation during the war. At that time the mark had already depreciated between ninety and ninety-five per cent, so that the testator must have had knowledge that he was dealing with a greatly depreciated currency. From evidence adduced by both sides, it appears that from August, 1914, to October, 1924,

the only legal currency in circulation in Germany was the so-called paper mark. The new reichsmark did not become the legal currency of Germany until October 11, 1924, or about eight months after the legacy herein had been paid. There is reference by affidavits submitted in behalf of the petitioner, to a rentenmark which was used prior to October 11, 1924, in current trade. It appears that the rentenmark was authorized by decree of the German government for use in German trade until the currency could be changed. Its acceptance in payment of debts was ordered so far as public officers were concerned. However, the proof submitted by the petitioner brings the use of this temporary currency back only to the early spring of 1924, whereas the payment in dispute was made on February twenty-seventh of that year. At no time prior to October 11, 1924, was the rentenmark full legal tender. It was used for convenience and for domestic purposes only and it was not dealt in on the New York foreign exchange market. It was merely a substitute for one trillion paper marks, established by the German government's decree, to provide a more stable medium of exchange in trade and commerce in that country.

The rule stated in *Matter of Lendle* (250 N. Y. 502) is not authority for relief to the widow here, because the facts in this case are different. In the *Lendle* case the testator died on March 29, 1927, two and one-half years after the change in the legal currency of Germany. In the present case the testator died on July 15, 1923, more than a year before the change, and his widow was paid her legacy in February, 1924, approximately eight months before the change in currency. The Court of Appeals in the *Lendle* case held that the bequest of German marks in the will was one wherein the marks were to be regarded, not as a measure of value, but as a commodity. The legacy was held to be similar to a general bequest of stocks and bonds, to be satisfied in kind. It was pointed out that the testator did not intend to give a legacy payable in dollars at the prevailing rate of exchange. In its conclusion, the court held that the legacy was payable in marks, not in dollars, and in marks which passed as such in the market at the time the legacy was paid. Applying that rule to the present case, the widow was fully paid when she received and receipted for the 300,000 marks in the paper currency which at the time of payment was the only legal tender in Germany and the only kind of mark which passed in the market on that date. Furthermore, the widow is not entitled to the relief she seeks because of her laches for over four years, her formal written receipt of the legacy, her acquiescence in the various accountings, her signed waivers in those proceedings, her conduct in receiving benefits under the

decrees, her retention of the income of the trust which, on her theory, included part of her legacy of marks, and her acceptance of the infants' allowances for support and maintenance made by various orders of this court from October 18, 1926, to the time of the beginning of the present proceeding. In view of my determination that there was no mistake of law, it is unnecessary to discuss her claim that her alleged ignorance of the law of New York furnishes a ground for vacatur. The decision in *Matter of Fuller* (62 App. Div. 428), where a reopening was permitted, is not applicable to the circumstances here.

For all of the foregoing reasons, the application is denied.